UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANETTE SCHOTT,

              Plaintiff,        CASE NUMBERS: 11-12468
                                       HONORABLE VICTORIA A. ROBERTS

v.

TRINITY HEALTH-MICHIGAN,
d/b/a ST. JOSEPH MERCY PORT
HURON, a domestic nonprofit corporation,

              Defendant.
_____/

## ORDER

**I.    INTRODUCTION**

Janette Schott, a Medical Technologist, alleges that her former employer, Trinity Health-Michigan, violated the Americans with Disabilities Act ("ADA"). Schott says that Trinity failed to accommodate her disability (bi-polar disorder) and engage in the interactive process required by law. She also says Trinity fired her because she was disabled; Trinity says it fired Schott because she endangered patients. Trinity's motion for summary judgment was referred to the Magistrate Judge who issued the Report and Recommendation ("R&R") to which Schott timely objects.

The R&R is **REJECTED**. Trinity's motion is **DENIED**; there are genuine issues of fact. Leave to amend the complaint is **GRANTED**. This case will proceed to trial.

**II.    BACKGROUND**

Schott is a Medical Technologist who began working for Trinity at Mercy Health

1

Center in 2001. Mercy Health Center is divided into the Main Hospital and the North End; it employs Medical Technologists who work in labs at both locations.

Medical Technologists test patient specimens.  Before testing, they perform quality checks on the lab instruments used to examine the specimens.  They validate that the instruments are working properly and producing accurate results.  They check instruments by running a standard sample with a known amount of an identified substance in it.  Under Trinity's policy, if the instrument gives an result within two standard deviations of the established average for the standard sample, the instrument is considered properly validated and ready to test a specimen.

Even if the instruments are checked correctly, testing errors can occur because of instrument malfunction and human error in the testing process.  Schott says it is typical for a Medical Technologist to make testing errors.  For example, she testified that she corrects errors probably once a month, and at times, once a week.  Sheri Nabozny, the Director of Laboratory Medicine at St. Joseph Mercy Hospitals who oversees Trinity's labs, testified that errors occur.

To prevent and correct them, Trinity's policy is to require Medical Technologists to review and sign a Medical Technologist's prior day's work.  The policy says "Each day the previous day's worksheets will be reviewed, and signed by the current days operator for each worksheet."

Nabozny says that Trinity's policy requires the next day's Medical Technologist to investigate, perform quality checks on the instrument, and retest specimens.  She says if a sample is still out of normal range the instrument will be repaired.  If this policy is followed correctly, patients will receive accurate results.

Schott worked at the North End. Full-time employees at the North End work thirteen hour days for seven to eight consecutive days, then are off for seven consecutive days. Full-time employees at the Main Hospital work forty hours per week.

Trinity knows that Schott is bi-polar and her disability is generally controlled by prescription medication. However, in December of 2009, Schott became so depressed that her doctor changed her medication and recommended that she not work from December 17, 2009, until January 1, 2010. Schott and her therapist contacted Trinity; it granted her leave until January 6, 2010.

Schott also says that as a result of her depression, she visited her therapist who wrote a letter requiring that she work eight hour days, and no more than five consecutive days in a week when she returned. This letter is not in Schott's medical file and Schott says she lost her copy. However, Schott's therapist says that she did speak with Schott about these restrictions and made a note that "Janette will explore with HR what work restrictions they will accommodate." Schott's therapist testified that the next day Schott called saying that HR would not accommodate her. Robb Gunn ("Gunn"), Trinity's Vice President of Human Resources testified that he recalls Schott calling, but cannot remember the nature of the conversation or when. Gunn also testified that Schott called him the week prior to her termination to request a meeting with Nabozny and him.

Schott testified that in January of 2010 she orally requested that Trinity accommodate her disability by modifying her work schedule. Schott says she called Nabozny, read her the work related restrictions, and requested that she be placed on eight hour shifts. Nabozny testified that she recalls having a conversation with Schott

about a reduction in work hours, but cannot say when the conversation occurred or why Schott wanted less hours. In a footnote in its brief in support of its motion for summary judgment, Trinity says that Nabozny and Schott spoke sometime in January of 2010 about Schott's schedule, but did not discuss work restrictions. Schott testified that she requested but was denied eight hour shifts to accommodate her disability. She returned to work and worked thirteen hours per day from January 8, 2010, until January 14, 2010, the date she was fired.

Trinity says that Schott was fired because of testing errors. It says the first error occurred on December 4, 2009 -- prior to Schott's prescription change and work restrictions -- when Schott failed to properly validate lab equipment. As a result, all specimens were retested. Schott says that she properly validated the equipment. She says that her results were within the allowable limit because the tests were within one standard deviation of the established average.

The alleged error was discovered on December 7, 2009 by a physician. Under Trinity's policies, the error should have been discovered earlier by Schott's co-worker and her supervisor, Ann Norris. In an email discussing the December 4 error, Norris admits that she and another employee failed to follow proper procedure. Neither Norris nor the other employee was reprimanded.

Trinity says the second testing error occurred on January 6, 2010 after Schott's medical leave. Trinity says that this error made Schott's termination necessary. Trinity says, Schott again failed to properly validate lab equipment. Schott disputes that she is responsible for any error. Schott says that she and Norris examined the specimens with the alleged errors. She says that she started the first phase of testing, but Norris

completed the second phase.

This time, Norris followed Trinity's procedures and the alleged error was discovered the next day. Norris reported the error to Nabozny on January 11, 2010 when Nabozny returned from vacation. No patients were retested.

On January 11, 2010, after speaking with Norris, Nabozny spoke with Gunn to request that Schott be terminated. Nabozny and Gunn discussed the two errors; Gunn agreed to terminate Schott. The two scheduled a meeting to confront and terminate Schott.

Schott says that she thought the meeting was to discuss her schedule modification. Schott says she raised the ADA and her schedule change but was told that the ADA was not applicable and she was fired. Gunn says he did not know Schott was disabled and the ADA was not mentioned.

Trinity says that it terminated Schott because she endangered patients. According to Trinity's policies, patient endangerment is a terminable offense that does not require notice or progressive discipline.

Schott says the alleged errors were a pretext to fire her for her disability. She provides evidence of a coworker who made similar errors, who was not fired, but was placed on a performance improvement plan ("PIP"). It is undisputed that Schott was not provided warnings or prior discipline for the errors. As evidence, Schott provided her last annual performance review from June, 2009. In it Nabozny says, "Janette is a good tech and patient focused but her constant schedule changes are a source of frustration for coworkers. She works well at MHC. She is liked by staff at Lakeshore."

The Equal Employment Opportunity Commission issued Schott a right to sue

5

letter for alleged violations of the ADA. Schott filed this action requesting monetary damages.

In its motion for summary judgment, Trinity alleges that Schott failed to establish a *prima facie* claim under the ADA.

The Magistrate Judge found that Schott's request for a modified schedule placed an undue burden on Trinity, even though Trinity did not argue undue burden. And, the Magistrate Judge did not consider Trinity's motion for summary judgment on the wrongful termination claim because he found that Schott did not allege wrongful termination. Importantly, Trinity did not argue failure to assert a claim.

Schott objects to the R&R. She says the Magistrate Judge erred in concluding that she did not allege a wrongful termination claim. She says Trinity did not even argue undue burden; and, issues of fact remain.

### III. STANDARD OF REVIEW

#### A. Report & Recommendation

Where a dispositive pretrial matter has been referred to a magistrate judge for an R&R, the district judge reviews *de novo* any portion of the magistrate judge's R&R to which the parties specifically objected. FED. R. CIV. P. 72(b). The referring judge may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made. *Id.*

#### B. Summary Judgment

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

**IV.   ANALYSIS**

Schott's single count complaint alleges that Trinity is liable for several violations of the ADA. *See Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 982 (6th Cir. 2011)(one general count may cover multiple ADA violations). The ADA bars employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees. . . ." 42 U.S.C. § 12112(a). The ADA defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Id.* § 12112(b)(5)(A).

**A.   Failure to Accommodate**

Schott says she made a request for a temporary reduction in hours to accommodate her known disability. She contends that the reasonableness of her

request is a jury question. She is correct.

To establish a *prima facie* case for failure to accommodate under the ADA, a plaintiff must show that:

> (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation.

*Johnson v. Cleveland City School District*, 443 Fed.Appx. 974, 982-983 (6th Cir. 2011), citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

The Magistrate Judge *assumed arguendo* that Schott established a *prima facie* claim for failure to accommodate but found it to be undisputed that Schott's proposed modified work schedule placed an undue burden on Trinity.

This was error. *See Keith v. County of Oakland*, No. 11-2276, 2013 U.S. App. LEXIS 595 (6th Cir. Mich. 2013) (reversible error to *sua sponte* raise undue burden when the defendant "has not argued, much less conclusively shown, that providing the accommodation would impose an undue hardship on the operation of its business"). Under the ADA "[o]nce a plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 983 (6th Cir. Ohio 2011)(citing *DiCarlo*, 358 F.3d at 419)); see also *Walsh*, 201 F.3d at 726 n. 3 (The burden of persuasion then shifts to the employer to show that the accommodation would impose an undue burden with regard to the specific situation) (citing *Monette*, 90 F.3d at 1184 n. 10)).

Courts consider these factors when determining whether an employer has

established an undue burden:

> (i)the nature and cost of the accommodation needed under this chapter;
> (ii)the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
> (iii)the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (iv)the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111.

There is not a *scintilla* of evidence in the record to support that Trinity met this statutory requirement; none of Trinity's briefs raises or signals a claim of undue burden. Trinity concedes it did not raise undue burden. And, because Trinity did not raise undue burden, if Schott establishes a *prima facie* case, she will recover.

Trinity argues Schott cannot prevail because she does not establish a *prima facie* case that she requested a reduced schedule, and that Trinity failed to accommodate her. Specifically, Trinity says Schott's claim fails because: (1) she made no request for a modified schedule, but if made (2) such request was unreasonable.

In performing a reasonable accommodation analysis under the ADA, it is the employee's duty to propose an accommodation that is objectively reasonable to her employer. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 726 n. 3 (6th Cir.2000) (citing *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173 n. 10 (6th Cir. 1996).

Whether Schott did or did not request an accommodation is a fact in dispute. To establish that Schott did not make a request for a modified schedule, Trinity places

9

great weight on the missing letter from Schott's therapist. Trinity says that because it never saw the letter, Schott allegedly lost her copy, and there is no notation of the letter in Schott's medical file, the Court should discredit all testimony that relates to a request for an accommodation. Trinity's argument misses the mark.

While there are exceptions, the general rule controls here: credibility determinations are reserved for the jury. In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court held " When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. In *Harris*, a *video* recording "clearly contradict[ed]" the plaintiff's version of the facts; therefore, the Supreme Court disregarded the plaintiff's testimony. *Id.* at 378. By contrast, while Schott may be impeached at trial concerning the letter she says she got from her therapist, evidence does support that she had a conversation with Trinity concerning an accommodation. And, the evidence is viewed in the light most favorable to Schott.

Schott says she made an oral request for a modified schedule. Schott's therapist made a notation in her file that she and Schott discussed Schott working a modified schedule. The file also says they agreed Schott would speak with Trinity about accommodations. Schott testified that she called Nabozny and requested eight hour work days. Nabozny testified that she remembers speaking with Schott about a reduction in hours but says Schott did not say why she needed a reduction. This is a disputed genuine issue of fact. Additionally, Schott's therapist's testimony is that Schott informed her that Schott spoke with, but was denied an accommodation by HR. This

testimony would be admissible at trial to rebut a suggestion that Schott recently fabricated calls to HR. Gunn recalls speaking with Schott; but cannot recall the exact nature of all conversations. However, Schott's medical file reports that she called Trinity to request a modified schedule. Finally, Schott testified that she made an additional request for a modified schedule during her termination meeting.

These are genuine disputed facts a jury must decide. But, to the extent Schott says that Trinity is liable as a matter of law if a jury finds that she requested a modified schedule, she is wrong.

While a request for a modified work schedule may constitute a reasonable accommodation; it is not reasonable if it eliminates any of the job's essential functions. *Bratten v. SSI Services, Inc.*, 185 F.3d 625, 632 (6th Cir. 1999); see also *Neview v. D.O.C. Optics Corp.*, 382 Fed. Appx. 451, 458 (6th Cir. Mich. 2010)(quoting *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)("[A]n employer may legitimately fire an employee for conduct, even conduct that occurs as a result of a disability, if that conduct disqualifies the employee from his or her job.")). Thus, the pertinent question is whether Schott's work schedule is an essential job function.

In conclusory fashion, Trinity says the two full-time employees at the North End are required to work Schott's schedule and the schedule is an essential function of the job.

Trinity directs the Court to *EEOC v. AT&T Mobility Servs. LLC*, No. 10-13889, 2011 U.S. Dist. LEXIS 144195 ( E.D. Mich. Dec. 2011), where the district court found that a plaintiff failed to state a *prima facie* case of discrimination because his request to modify his schedule was unreasonable. But, Trinity's reliance on *AT&T Mobility Servs.*

*LLC* is misplaced.

In *AT&T Mobility Servs. LLC*, all managers worked over forty hours per week and the plaintiff "concedes that working more than 40 hours a week . . . is an essential function of the . . . position." *Id.* at *23. Schott makes no concession; she disputes that the work schedule is essential.

Essential functions of a job are those functions which cannot be removed without fundamentally altering the job position. 42 U.S.C. § 12111(8). When determining what functions are essential, the ADA directs courts to consider:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time on the job spent performing the function; (4) consequences of not performing the function; (4) consequences of not requiring the incumbent to perform the function; (5) terms of a collective bargaining agreement, if any; (6) work experience of past incumbents on the job, and/or (7) current work experience of incumbents in similar jobs.

*AT&T Mobility Servs. LLC*, 2011 U.S. Dist. LEXIS 144195 at *21.

Schott presents sufficient evidence to dispute whether her work schedule is essential. Both parties agree: current Medical Technologist do work modified schedules. It is undisputed that Trinity's Medical Technologists at the Main Hospital work eight hour shifts and some employees at the North End work part-time. Furthermore, Schott's last performance evaluation by Nabozny says that Trinity has allowed Schott to work a modified schedule. This evidence militates against Trinity's claim that Schott's schedule is essential. Whether thirteen hour work days is an essential function of Schott's job is best left for a jury to decide.

Summary judgment is denied on Schott's failure to accommodate claim.

**B.      Failure to Engage in the Interactive Process**

"[T]he interactive process is mandatory, and both parties have a duty to participate in good faith." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 556 (6th Cir.2008).

Trinity did not engaged in the interactive process. The question is: why? *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir.2007) ("[w]hen a party obstructs the process or otherwise fails to participate in good faith, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.' ")(quoting *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir.1996)).

Trinity's duty to engage in the interactive process is contingent on Schott's request for a modified schedule. *See Lockard v. General Motors Corp.*, 52 App'x 782, 788 (6th Cir. 2002)(employee must first make request for an accommodation). As already held, whether Schott made the request is a jury question.

But the process is a means to an end: "[e]mployers who fail to engage in the interactive process in good faith face liability [under the ADA only] if a reasonable accommodation would have been possible." *Lafata v. Church of Christ Home For the Aged,* 325 F. App'x 416 (6th Cir. 2009).

Schott says as reasonable accommodations Trinity could have: (1) modified her schedule, (2) allowed her to swap positions with someone at the Main Hospital, or (3) placed her in a vacant position. Trinity says that engaging in the interactive process would have been futile because Schott's proposed accommodations were unreasonable.

Schott's recovery on this claim cannot be based on Trinity's failure to swap or place her in a vacant position; she fails to establish that there was a vacancy or person

13

willing to swap. *See Bratten v SSI Services Inc.*, 185 F.3d 625, 633-34 (6th Cir.1999) (assigning an employee to a vacant position is a reasonable accommodation); see also *Monetee*, 90 F.3d at 1186 (employee has burden to show vacancy existed at the time of termination); *Trout v. Aerospace Testing Alliance*, 303 Fed. Appx. 272, 274 fn. 1 (6th Cir.2008). However, she may recover if a jury finds that her request for a modified schedule was a reasonable accommodation.

Summary judgment is denied on Schott's failure to engage in the interactive process claim.

**B.     Wrongful termination**

*Sua sponte* the Magistrate Judge found that Schott did not plead a wrongful termination claim:

> Trinity argued in its motion that plaintiff could not prove that she was terminated on the basis of her disability. However, nothing in the complaint suggests that plaintiff is making a claim for wrongful termination on the basis of disability under the ADA, and therefore, this claim will not be considered in this report and recommendation.

Hence, the Magistrate Judge did not address the merits of Trinity's motion or consider whether there were disputed questions of fact concerning the reason for Schott's termination.

Schott disputes the Magistrate Judge's conclusion that she failed to plead wrongful termination. The Court agrees with Schott. However inartfully styled, Schottt did allege that she was wrongful terminated because of her disability in violation of the ADA.

These allegations are sufficient to place Trinity on notice of an ADA wrongful termination claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

14

plaintiff allege a "short and plain statement." Fed. Rule Civ. Proc. 8(a)(2). The allegation must be sufficient to place a defendant on notice. The allegations in Schott's complaint say that due to her disability, her doctor restricted her work schedule, Schott asked Trinity to accommodate her restrictions, Trinity refused and "As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits and loss of employment opportunities." (Plaintiff's Compl. ¶ 66).

Importantly, Trinity does not even challenge the sufficiency of Schott's pleadings. Rather, Trinity says there are no issues of fact in dispute, and that Schott cannot establish a *prima facie* claim.

To establish a *prima facie* case for wrongful termination under the ADA a plaintiff must show:

> 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Neview*, 382 Fed. Appx. at 458(quoting *Hopkins County Sch. Bd. of Educ.*, 484 F.3d at 365).

The Court has already concluded that whether Schott stated a *prima facie* claim is an issue of fact.

Alternatively, Trinity says Schott's claim fails because it terminated her for a legitimate non-discriminatory reason: failure to twice properly validate lab equipment.

If an employer provides a non-discriminatory reason for terminating an employee, an employee may not recover unless she can show that the employer's reason is

pretextual. *MacDonald Douglas, Corp. v. Green*, 411 U.S. 792 (1963). A plaintiff can demonstrate pretext by showing that the employer's proffered reason:

> (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Dews v. A.B. Dick Co.,231 F.3d 1016, 1021 (6th Cir. 2000). The "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants ... did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.

*Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)).

The alleged errors appear to be anticipated by and within the range of Trinity's policy. Schott testified that her December 4 validation was proper, that she and Norris tested the January 6 specimens and she did not err; and, Trinity had no basis to assign error to her. A jury could conclude that these alleged errors were not sufficient to justify Schott's termination; or, were not errors at all.

There is no dispute that Schott's alleged January 6 error did not endanger patients. Nabozny testified that no patient was placed in danger due to the January 6 error. But, Trinity's reason for terminating Schott is because she endangered patients, twice. Nabozny's testimony contradicts Trinity's reason for termination and corroborates Schott's claim that there was no basis in fact for her termination.

Schott provides two additional reasons from which a jury could reasonably infer that she was fired because of her disability.

First, Schott testifies --and Trinity admits --that another employee who made a similar error was placed on a PIP before termination; Schott was not even provided a warning. Secondly, it is undisputed that on December 4, 2009, Norris and another

16

employee failed to follow Trinity's testing procedure. But, neither Norris nor the other employee was terminated for errors. Norris was also involved in the January 6 error; but, again, was not reprimanded. The common distinction between Schott and other employees who erred is that Schott had a known disability and requested an accommodation. Whether Schott, "a good technician" as Nabozny says, was terminated because of her disability or for her alleged errors, is a question for the jury.

Trinity's argument that it is not responsible because Gunn made the decision to terminate Schott and Gunn did not know of her disability, is unpersuasive. Gunn may have made the decision, but his decision was at the request of, influenced by, and informed by Nabozny. And, Nabozny did know of Schott's disability and her request for a modified schedule.

Trinity's motion for summary judgment on Schott's wrongful termination claim is denied.

**C.     Leave to Amend**

In response to the Magistrate Judge's *sua sponte* dismissal of her wrongful termination claim, Schott asks for leave to amend her complaint.

Rule 15(a)(2) of the Federal Rules of Civil Procedure says that a court may freely grant leave to amend a pleading "when justice so requires," in order to ensure that a case is tried on its merits "rather than [on] the technicalities of the pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (per curiam). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005).

Schott did not receive notice that her complaint was deficient until the Magistrate Judge issued his R&R. Indeed, Trinity did not file a motion to dismiss; it filed a motion for summary judgment on this claim. Discovery undoubtedly was conducted as if a wrongful termination claim was part of the case. In light of these facts, it is equitable to allow Schott leave to amend. Because the Court has already found that Schott did allege a wrongful termination claim and Trinity was on notice, Schott may, but need not, file an amended complaint.

**IV. CONCLUSION**

The Magistrate Judge's Report and Recommendation is **REJECTED**. Trinity's motion is **DENIED**. Schott's request for leave to amend her complaint is **GRANTED**. Trial will **PROCEED** on all claims. Among the questions a jury must decide are:

(1) Did Schott make a request for an accommodation?

(2) Was Schott's request for a modified schedule reasonable?

(3) Is working thirteen hours per day an essential job function?

(4) Are the alleged testing errors a legitimate non-discriminatory reason for Schott's termination?

(5) Was Schott's termination pretextual?

The Court will issue a scheduling order.

**IT IS ORDERED.**

                                                   /s/ Victoria A. Roberts
                                                   Victoria A. Roberts
                                                   United States District Judge

Dated: March 15, 2013

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 15, 2013.<br><br>S/Linda Vertriest<br>Deputy Clerk |

19